ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

BARBARA J. VALLIERE (DCBN 439353)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7039
    FAX: (415) 436-7234
    barbara.valliere@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MARK GUARDADO, JR. <br><br> Defendant. | CASE NOS. 20-CR-00431-001 HSG <br>               21-CR-00470 HSG <br><br> UNITED STATES' SENTENCING MEMORANDUM <br><br> Sentencing Date: September 11, 2024 <br> Location: 4th Floor, Courtroom 2 <br> Time: 2:00 p.m. |

## I.   INTRODUCTION

Purusant to Criminal Local Rule 32-5(b), the United States respectfully submits its sentencing memorandum in the above-captioned case. For the reasons set forth below, the United States recommends that the Court impose a sentence of time served followed by five years of supervised release in Case No. 21-CR-470, and concurrent terms of three years of supervised release for each of the counts of conviction in Case No. 21-CR-431, a $600 special assessment, and restitution in the amount of $13,041.36.

## II.   BACKGROUND

### A.   Offense Conduct

The Indictment in Case No. 20-CR-043 alleged that in 2018 and into 2019, Mark Guardado, Jr. formed a conspiracy with indicted and unindicted persons to steal mail, obtain victims' identities and personal identifying information, impersonate those victims, and then cash their checks or use their credit and other access cards to obtain money. Guardado and others used stolen and/or counterfeit postal keys to gain access to apartments buildings in Sunnyvale, Palo Alto, Santa Clara, Redwood City, Menlo Park, and San Jose, for the purpose of stealing mail and using information gleaned from that stolen mail to negotiate stolen checks and activate credit cards. Ashley Overton, Guardado's girlfriend at the time, as well as codefendants Juan Dagio, Andrew Perez, and others assisted Guardado in stealing mail, and then used counterfeit driver's licenses that Guardado manufactured that contained real people's personal identifying information (PII) and their pictures to cash checks, use their check and gift cards, and activate their credit cards.

The Information in Case No. 21-CR-470 alleged that on December 8, 2020, the day that law enforcement executed an arrest and search warrants at Guardado's home based on the above-described conduct, Guardado possessed with the intent to distribute methamphetamine.

*The conspiracy*

Text messages found on Mark Guardado's and Ashley Overton's devices demonstrated the nature of their personal relationship and their relationships with the codefendants. Presentence Report (PSR) ¶ 17. Strewn throughout their text messages were references and allusions to their identity-theft scheme, stolen mail, and Guardado's use of postal keys. PSR ¶ 17. Guardado's devices revealed that he

was in possession of both real and counterfeit driver's licenses depicting photographs of Overton, Dagio, Perez, and others. PSR ¶ 18. For example, these devices contained the counterfeit driver's licenses with the photographs of, among others, Guardado, Overton, Dagio, and Perez, as well as the name and personal identifying information (hereinafter PII) of as many as 20 separate victims. *See* PSR ¶ 18; Plea Agreement ¶ 2. In fact, evidence revealed that on October 12, 2018, Overton, using a counterfeit driver's license containing her photograph but the name and personal identifying information of C.K. booked a room on Hotels.com. PSR ¶ 19. Overton texted Guardado about the fact that she had used C.K.'s name and PII to secure a hotel room. *See* PSR ¶ 19.

Guardado often texted his codefendants about the fact that he was engaged in mail theft with counterfeit postal keys, and that he was making and using counterfeit identification cards. For example, on October 31, 2018, Guardado texted Perez and his girlfriend about their use of postal keys and their agreement to split the proceeds, PSR ¶¶ 20-21, and on December 21, 2018, Guardado texted Overton, telling her "I'm meeting up w Drew for mt view key copy AFTER I hustle a pipe and shit," indicating that he was meeting Perez to use a stolen key to obtain mail. PSR ¶ 22. On January 28, 2019, Overton sent the following text message to codefendant Juan Dagio, revealing that Guardado had made her fake identification cards and that the two had engaged in fraud: "Juan I lost my wallet somewhere AND IF SOMEONE FINDS It AND RETURNS IT TO THE ADDRESS ON THE ID (a fake ID mark made me) THEYLL BE sending marks PayPal card and a bunch of my cards with my and his names on it to the person mark and I frauded!!!! I NEED to contact mark now!!!!!!" PSR ¶ 26. On January 30, 2019, at 8:06 a.m. Guardado texted Overton that he "was stranded in Palo Alto on foot with 2 backpacks and a big garbage bag full of mail and couldn't order a Lyft...." PSR ¶ 27. On February 26, 2019, Guardado sent a message to Overton explaining that that he needed to spend "an hour making keys." PSR ¶ 30.

### *Overton is caught in a hotel parking lot and the conspiracy unravels*

On March 22, 2019, uniformed officers with the San Mateo County Sheriff's Office were driving through the parking lot of the Extended Stay America Hotel in San Mateo, California, when they noticed a silver SUV, motor running, containing an apparently sleeping female was sitting in the driver's seat. PSR ¶ 31. The Sheriff's Deputy ran the license plate which came back to a Brian Clapp.[1] PSR ¶ 31.

---

[1] Clapp later told investigators he registered the SUV under his name but Overton drove it and

The deputy approached the driver's side window and tapped on it. The woman behind the wheel – later identified as Overton – awoke and opened the door. PSR ¶ 31. Overton told him she was waiting for her boyfriend to come down from their room, and told the deputy they were staying in room "246." PSR ¶ 31. He then asked if she was on probation, and she responded "not yet." PSR ¶ 31. A records check revealed that Overton was on active probation in Santa Clara County for forgery and was subject to a search condition. PSR ¶ 31. When the deputy searched the car, he found a black purse that contained suspected methamphetamine, a pink wallet with Visa debit card with Ashley Overton's name on it, and a Golden State Advantage card with the name "Mark Guardado." PSR ¶ 31. Asked who Mark was, Overton said he was her ex-boyfriend, and that they were up in the room. PSR ¶ 31. A further search of the SUV yielded a black duffle bag containing a large amount of mail, checks, passports, counterfeiting tools, multiple driver licenses that appeared to be counterfeit, photo printing paper, a color printer, and a laminator. PSR ¶ 31. The deputy also found indicia bearing Overton's and Guardado's names, including multiple driver's licenses with Guardado's photograph but different names. PSR ¶ 31.

Using a key card obtained from Overton, the officers went to hotel Room 246, tried the key, but it did not work. PSR ¶ 32. It turned out that room 246 was unoccupied, but Room 245 had been rented by someone Overton had referenced. PSR ¶ 32 . When the officers knocked on the door of Room 245, there was no answer. PSR ¶ 32. Officers entered the now-empty room and found a large garbage bag containing dozens of items of mail addressed to dozens of citizens living in San Mateo and Santa Clara Counties. PSR ¶ 32. The room also contained several backpacks and garbage bags containing, all told, 990 pieces of opened and unopened mail belonging to about 450 individuals, several counterfeit driver's licensed bearing photos of Mark Guardado and other defendants (*e.g.*, Juan Dagio) but with the personal identifying information of other people, images of counterfeit postal keys, and indicia in the names of, among others, Dagio, Overton, and Guardado. PSR ¶ 32. The room also contained several baggies of off-whiter crystalline substance that appeared to be methamphetamine. PSR ¶ 32.

made the payments.

The hotel registry records revealed that Room 245 was booked on line by Guardado using a credit card ending in 7203, a card found in the room. PSR ¶ 33. Surveillance footage from the hotel's reception area shows a man checking in that morning at 2:04 a.m. with several large bags, and before he brought in the bags, the man holding the door for a second man who resembles Guardado and who was holding a small child.[2] PSR ¶ 33.

### *The US Postal Inspection Service investigation*

The United States Postal Inspection Service (USPIS) initiated an investigation into the stolen mail found in the car and hotel room on March 22, 2019. PSR ¶ 34. The postal inspector took custody of the stolen mail, access cards, and personal identifying information recovered from the car and the room on March 22. PSR ¶ 34. In all, there were 990 pieces of mail addressed to 450 different individuals and businesses. PSR ¶ 34. Victim notification letters were mailed to the customers informing them about the recovered stolen mail, and about 103 victims provided signed statements attesting that they did not know Overton, Guardado, or Curry and did not give anyone permission to possess their mail or their personal identifying information. The total face value of the mail was $542,640. PSR ¶ 34.

On May 16, 2019, Guardado called Overton from San Mateo county jail. The two discussed the items recovered in Room 245. PSR ¶ 35. Guardado asked, "[d]id they [*i.e.*, police] look on the top of the cabinet. We hid a clipboard on the top of the cabinet." PSR ¶ 35. Law enforcement later learned that the San Mateo County Sheriffs had missed the clipboard on March 22 when they searched the hotel room. PSR ¶ 35. The clipboard was turned over by a subsequent guest. The clipboard contained opened mail, credit cards, and checks belonging to multiple people. PSR ¶ 35.

A USPIS search of Overton and Guardado's Apple accounts revealed the above-cited texts and photos. Guardado's Google account also contained a treasure trove of evidence supporting the conspiracy and substantive charges. In particular, the Postal Service Inspectors found (1) photos of

---

[2] On or about March 26, 2019, victim D.E. reported to the San Jose Police Department that an unknown male had used his Chase credit card for two cash advance transactions at Casino M8trix in San Jose. The victim whose credit card was used lived at an address where Guardado had stolen mail. In fact, 37 pieces of stolen mail recovered from Room 245 were addressed to individuals in apartments at the address where D.E. lived.

U.S. SENTENCING MEMORANDUM
CR 20-00431-001 & 21-00470 HSG                4

stolen mail, stolen checks, and stolen credit cards; (2) documents with other individuals' personal identifying information; (3) pictures of actual Postal arrow keys and evidence of production of counterfeit postal keys for Sunnyvale, Palo Alto, Santa Clara, Redwood City, Menlo Park, and San Jose; (4) software to create counterfeit driver's licenses for multiple states, including California; (5) counterfeit driver's licenses that bore his likeness and that licenses of, among others, Overton, Dagio, and Perez; (6) stolen Treasury checks; and (7) evidence of check washing and making counterfeit checks. *See* PSR ¶ 36.

### *The Arrest and Search Warrants*

On December 8, 2020, agents executed arrest and search warrants at Guardado's residence in Folsom, California. PSR ¶ 39. During the search, the agents located four bags containing 49.5175 grams of methamphetamine and a digital scale containing white residue. In his plea agreement, Guardado agreed that he knowingly possessed the methamphetamine with the intent to distribute it. *See* 21-CR-470, Dkt 9, ¶ 2.

**B.     Procedural History**

On November 17, 2020, Guardado, Overton, Dagio, Perez, and Clapp were charged in an 18-count Indictment with, among other offenses, Conspiracy to Commit Theft by Mail and to Commit Fraud in Connection with Identification Documents in violation of 18 U.S.C. § 371. 20-CR-431, Dkt. 1. On December 8, 2021, Guardado was charged by Information with a single count of violating 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), Possession with the Intent to Distribute Methamphetamine. 21-CR-470, Dkt. 1.

On December 15, 2021, Guardado pleaded guilty to five offenses charged in Case Number 20-CR-431: Count One, 18 U.S.C. § 371 (Conspiracy to Commit Theft of Mail and to Commit Fraud in Connection with Identification Documents); Count Five, 18 U.S.C. § 1028(a)(8) (Fraud in Connection with Identification Documents – Trafficking); Count Eight, 18 U.S.C. § 1704 (Unlawful Possession of Postal Keys and Locks); Count Ten, 18 U.S.C. § 1708 (Possession of Stolen Mail); and Count Sixteen, 18 U.S.C. § 1028A (Aggravated Identity Theft). *See* 20-CR-431, Dkt. 104, 105. Guardado also pleaded to a single count in Case Number 21-CR-470: Count One, 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Possession with the Intent to Distribute Methamphetamine). *See* 21-CR-470, Dkt. 9, 10.

## III. THE ADVISORY GUIDELINES CALCULATION

The parties agreed to the following advisory Guidelines calculation:

Group One: Counts One, Five, Eight, and Ten (20-CR-000431)

| | | |
|---|---|---:|
| a. | Base Offense Level, U.S.S.G. § 2B1.1 (a)(1) | 6 |
| b. | Specific offense characteristics under USSG Ch. 2 | |
| | U.S.S.G. § 2B1.1(b)(1)(C) Amount of loss – (actual amount of loss of more than $15,000) | + 4 |
| | U.S.S.G. § 2B1.1(b)(2)(A) – 10 or more victims | + 2 |
| | U.S.S.G. § 2B1.1(b)(11)(C)(ii) (possession of 5 or more means of identification that were unlawfully produced from, or obtained by the use of, another means of identification) | + 2 |
| c. | Adjustments under U.S.S.G. Ch. 3 (*e.g.*, role in the offense) | |
| | U.S.S.G. § 3B1.1(c) (organizer, leader adjustment) | + 2 |
| d. | Adjusted Offense Level: | 16 |

Group Two: Count One (21-CR-000470)

| | | |
|---|---|---:|
| a. | Base Offense Level, U.S.S.G. § 2D1.1 (possessing with intent to distribute 49.5175 grams of methamphetamine) | 22 |
| b. | Specific offense characteristics under USSG Ch. 2: none | |
| c. | Adjustments under U.S.S.G. Ch. 3: none | |
| d. | Adjusted Offense Level: | 22 |

Multiple Count Adjustment (U.S.S.G. § 3D1.4 (a), (b)):

| | | |
|---|---|---:|
| a. | Increase in Offense Level | +1 |
| b. | Combines Adjusted Offense Level | 23 |

Acceptance of Responsibility (U.S.S.G. § 3E1.1 (a), (b)):      - 3

Total Offense Level:      20

Plus a mandatory two-year term of imprisonment for Count 16.

Probation agrees with the parties' advisory Guidelines calculation. *See* Presentence Report (PSR) at ¶¶ 5, 45-67. Probation has determined that the defendant has 21 criminal history points and falls within Criminal History Category VI. PSR ¶¶ 83-84. With an Adjusted Offense Level of 20 and

Criminal History Category of VI, the defendant's advisory Guidelines range is 70 to 84 months' imprisonment, plus a mandatory two-year term of imprisonment for Count 16.[3]  The PSR recommends a total sentence of time served, concurrent three-year terms of supervised release on all counts, and a $600 special assessment.  *See* PSR, Sentencing Recommendation, p. 1.

## IV.   DISCUSSION

### A.   Legal Standards

The Court should impose a sentence sufficient but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment.  *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also* 18 U.S.C. § 3553(a).  After determining the appropriate advisory Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness considering the factors set out in Section 3553(a).  *Carty*, 520 F.3d at 991-93.  Under Section 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others:

(1)   The nature and circumstances of the offense and the history and characteristics of the defendant;

(2)   The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3)   The need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4)   The need for the sentence imposed to protect the public from further crimes of the defendant; and

(5)   The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

### B.   Sentencing Recommendation

For the reasons explained below, the United States recommends that the Court impose a sentence of time served, followed by one term of five years' supervised release on the drug count in Case No. 21-

---

[3] On February 13, 2023, Judge Chhabria granted the United States' motion to allow the Court to impose a sentence below the mandatory minimum.  This motion was a precursor to defendant Guardado's eligibility to participate in the Convictions Alternative Program (CAP).

CR-470 and concurrent terms of three years of supervised release on each of the counts of conviction in Case No. 20-CR-431, a $600 special assessment, and restitution in the amount of $13,041.36.

### 1. Nature and circumstances of offense/history and characteristics of defendant

The conspiracy charged in this case was both long-running and extensive. Guardado and his codefendants regularly stole mail in bulk from apartment buildings using counterfeit or stolen postal keys to gain access, sifted through the mounds of stolen materials for checks and usable credit and debit cards, and then used the personal identifying information of their victims, along with counterfeit identification cards, to obtain money or make charges. Despite that Guardado ultimately garnered a relatively small amount of money from the scheme, but its unabated duration and number of victims underscore its rampant lawlessness. The scheme lasted over 20 months and involved hundreds of postal theft victims and thousands of pieces mail. And, as evidenced by the cache of incriminating documents, photographs, and videos found on his devices, Guardado was the plainly the ringleader and the mastermind behind it all.

But the cache of documents, photographs, and videos also revealed that Guardado is an intelligent person who could have directed the ingenuity needed to perpetrate his fraud schemes to lawful purposes. Instead, Guardado's long criminal history demonstrates that time and again he relied on mail and identity theft as a means to support himself, his then-girlfriend Overton, his young son, and his drug habit. Indeed, since 2014, Guardado's personal relationships appeared to have been rooted in drug abuse and addiction issues. That said, throughout the long post-charge period in these cases, nearly four years, Guardado has consistently expressed his desire to set a new course for his life. His successful completion of CAP, and his ability to maintain a stable residence and to care for his young son all signal that he has taken a significant step in the right direction.

### 2. Need for the sentence imposed to reflect the seriousness of the offenses, to promote respect for the law, and to provide just punishment for the offenses

As noted above, this was a long-running fraud and identity theft scheme that affected hundreds of people and Guardado was at the center of all of it. Ordinarily, this conduct would justify a significant sentence. Indeed, before Guardado was admitted into the CAP program, the United States was recommending a 36-month sentence. However, given Guardado's ability to maintain sobriety, to secure

U.S. SENTENCING MEMORANDUM
CR 20-00431-001 & 21-00470 HSG                  8

employment, and to care for his minor son, the United States supports a variance from the advisory Guidelines range and concurs in Probation's recommendation of time served.

### 3. Need for the sentence to afford adequate deterrence to criminal conduct

Although Guardado has a lengthy criminal history, this is his first federal conviction, and by all accounts, it appears to have served as the wake-up call that he needed to cease his lawless activity and begin to turn his life around. Although he is perhaps only at the beginning of this journey and continued sobriety will undoubtedly pose obstacles for him, the United States believes that, given all of the circumstances in this case and Guardado's post-charge conduct, a time-served sentence followed by five years of supervised release may be the best way to keep him on a lawful path and thus serve as an adequate deterrent to criminal conduct.

### 4. Need for the sentence to protect the public from further crimes by defendant

This conspiracy cast a wide net – hundreds of people in the South Bay had their mail stolen and scores had their identities compromised. While the overall actual dollar loss figure is relatively low, the postal theft victims suffered more than a mere inconvenience. These victims had to live with the knowledge that their mail was not secure, and with the fact that their personal identifying information was in the hands of thieves. However, for the reasons cited above, the United States believes that a sentence of time served with five years of supervised release and the conditions recommended by Probation in the PSR should protect the public from further crimes by the defendant.

### 5. Need to avoid unwarranted sentence disparities among similarly situated defendants

The United States provides the following regarding the need to avoid unwarranted disparities:

First, the Judicial Sentencing Information (JSIN) database which can be found on the United States Sentencing Commission website reveals the following about similarly situated defendants (*i.e.*, those convicted of conspiracy with an adjusted advisory Guidelines offence level of 20 and a CHC of VI):

> During the last five fiscal years (FY2017-2021), there were 3 offenders whose primary guideline was § 2D1.1 and Methamphetamine was the primary drug type, with a Final Offense Level of 20 and a Criminal History Category of VI, after excluding offenders who received a §5 K1.1 substantial assistance departure. For the 3 offenders (100%) who received a sentence of imprisonment in whole or in part, the average length of

imprisonment imposed was **64 month(s)** and the median length of imprisonment imposed was **63 month(s)**.

*See* USSC - JSIN (highlighting added).

Second, Guardado's codefendants in this case were sentenced to the following terms: (1) Overton (CHC III, advisory Guidelines range of 15 to 21 months, plus 24 months for a violation of Section 1028A), successfully completed CAP and received a time-served sentence followed by 3 years of supervised release; (2) Perez (CHC VI, advisory Guidelines range of 24 to 30 months) was rejected from CAP and sentenced to 5 years' probation; (3) Dagio (CHC VI, advisory Guidelines 24 to 30 months) was terminated unsuccessfully from CAP and received time-served sentence followed by three years of supervised release; and (4) Clapp (CHC I, advisory Guidelines range 6 to 12 months) successfully completed a post-plea diversion program and his case was dismissed.

### 6. Expanded Search Condition

Finally, the Court should impose a three-year term of supervised release with an expanded search condition agreed to by the parties. *See* Dkt. 104, ¶ 8. Guardado's criminal history proves that he poses a high risk of reoffending, and a warrantless search condition is "necessary to mitigate that risk." *See United States v. Cervantes*, 859 F.3d 1175, 1184 (9th Cir. 2017).

### CONCLUSION

For the reasons stated and in full consideration of the defendant's history and characteristics, together with the goals of sentencing, the government respectfully requests that the Court sentence the defendant to time served in both cases followed by five years of supervised release in Case No. 21-CR-470, and concurrent three-year terms of supervised release for the offenses of conviction in Case No. 20-CR-431. The United States also asks that the Court impose a $600 special assessment, and restitution in the amount of $13,041.36, to be paid jointly and severally with defendants Overton and Perez.

DATED: September 4, 2024   Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

*Barbara J. Valliere*
BARBARA J. VALLIERE
Assistant United States Attorney

U.S. SENTENCING MEMORANDUM
CR 20-00431-001 & 21-00470 HSG            10