JODI LINKER
Federal Public Defender
GABRIELA BISCHOF
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:    415.436.7700
Facsimile:    415.436.7706
Email:          Gabriela_Bischof@fd.org

Counsel for Defendant Guardado

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARK GUARDADO, JR.,<br><br>Defendant. | Nos. CR 21-470-HSG<br>20-431-HSG<br><br>**DEFENDANT'S SUPPLEMENTAL SENTENCING MEMORANDUM**<br><br>**Date:** September 11, 2024<br>**Time:** 2 p.m.<br>**Court**: Hon. Haywood S. Gilliam |

## INTRODUCTION

Mark Guardado will stand before this Court for sentencing on September 11, 2024 after pleading guilty to five offenses related to mail fraud and identity theft, as well as possession with intent to distribute methamphetamine. The probation officer calculates the resulting applicable guideline range to be 70-87 months custody in case 21-CR-470 and 60 months in case 20-CR-00431, but recommends a "time-served" sentence based primarily on Mr. Guardado's post-offense rehabilitation, as demonstrated by his successful completion of the Conviction Alternatives Program ("CAP"). *See* Presentence Investigation Report disclosed August 28, 2024 ("PSR"), Sentencing Recommendation.

On December 23, 2020, Mr. Guardado was released from custody for the last time, determined to address his addiction and regain custody of his young son. Under the watchful eye of Pretrial Services and the guidance of the (CAP) team, he has spent the last three and a half years becoming the sober, present father, hard worker, and eager student he is today. As set forth below, a sentence of time served followed by three years of supervised release will recognize Mr. Guardado's extraordinary post-offense rehabilitation and best further the sentencing goals set forth in 18 U.S.C. § 3553(a)(2).

## BACKGROUND

1. **History and Characteristics**[1]

Mr. Guardado's life from age 7 – when his parents divorced and his father left the family- was marked by the chaos of addiction, first his mother's and then his own. ¶ 93. Without his father's consistent presence, Mark was left in the spiral of his mother's addiction and poor choices. ¶ 92. His mother was physically abusive throughout his childhood, and after the divorce, her new romantic relationships also put him in the orbit of people who abused him physically and sexually. ¶¶ 92-94. He turned to drugs to blunt the pain almost immediately. At age 8 he began using marijuana. ¶ 104. As he got older, he used heroin, acid, mushrooms, and ecstasy. *Id*. He was discharged from the military after testing positive for cocaine at age 20 and his criminal history commenced almost immediately thereafter. ¶ 109. He eventually tried methamphetamine, his drug of choice. At his worst, he was spending nearly 200 dollars per day to maintain his habit. ¶105.

Mr. Guardado's addiction cost him his military career, his health, his freedom, and it nearly cost him his only child. His sister wrote: "I have watched my brother struggle my whole life. First as a young boy with an inconsistent father figure and alcoholic mother, then as an awkward, chubby teen that struggled to fit in, as a young man who worked hard to lose weight and join the Marines, to being discharged a drug-addicted adult who struggled with his sexuality and losing the military career he had spent years learning and preparing for. I have watched him spend years in prison with no visits,

---

[1] Mr. Guardado previously submitted a sentencing memorandum in support of his request for a referral to CAP. 3:20-cr-00431, Dkt. 220. The relevant portions of that memorandum are reproduced here for ease of reference.

commissaries, or communication from his parents and with no help, or a soft place to land when he gets out." Dkt. 220-1 at p. 1.

Mr. Guardado struggled throughout his life to embrace his sexuality. During his first same sex relationship, his partner lied to him and exposed him to HIV, which Mr. Guardado contracted. ¶ 101. He thought he would never have children, a family, or a normal life and retreated more deeply into his addiction. When his son was born, Mr. Guardado considered it nothing short of a miracle. But as a result of his criminal activity and addiction, his son was placed into foster care for nearly eleven months. "This separation and the turmoil and devastation it caused his son was the reality check that saved his life." Dkt. 202.

### 2. Circumstances of the Offense

Mr. Guardado has a significant criminal history, but all his prior convictions involve either 1) drug possession, 2) conduct that occurred while Mr. Guardado was under the influence of drugs, or 3) fraud-type offenses involving credit card fraud or bad checks in modest dollar amounts; crimes that are typically exacerbated by heavy drug use. *See, e.g.*, PSR ¶¶ 72, 74-82.

Although the government has described Mr. Guardado as the "ringleader" of the mail theft and fraud conspiracy (and it is true that he was the person with the most prior knowledge and he has accepted a 2-point adjustment for teaching the other codefendants how to carry out the offenses and coaching them when issues arose), the PSR reflects that the offense conduct was hardly a smoothly orchestrated fraud, carried out with the finesse of a Ponzi scheme or the sophistication of an insider trading scam. The conspiracy involved addicted, mentally ill people moving all their belongings from AirBnb to hotel night after night because they had no money for longer term residences (¶ 30), getting stranded while stealing mail out of mailboxes in the middle of the night (¶ 27), using drugs just before committing crimes (¶ 22), infighting because none of them ever had any money (¶ 20, 21), and going missing because Mr. Guardado was on a bender (¶ 29). In December 2020, when agents executed a search warrant at the place Mr. Guardado was staying in Folsom, they discovered nearly 50 grams of methamphetamine and indicia of distribution and use. ¶ 39. This chaotic life was the result of addiction. His addiction allowed Mr. Guardado the shallow comfort of believing his crimes were victimless, but

the crimes were not financially remunerative enough to be worthwhile for anyone not addicted to drugs. While he participated in these crimes, he never had a stable residence, couldn't hold a steady job, and could not consistently afford the most basic necessities, like food, for him and his son. Without the distorting lens of addiction, he finally viewed his crimes as destructive to both his community and his family.

### 3. Post-Offense Rehabilitation

After his release on pretrial supervision in December 2020, Mr. Guardado spent four months in residential treatment at Pathway Society before he transitioned to a sober living environment for three more months. ¶ 7. After that, he lived in court-sponsored housing for single fathers and their children. *Id*. During that time, he was reunited with his son but he also worked with mental health advocates, social workers, anger management specialists and parent mentors to regain custody through Dependency Court. During his time in CAP, he participated in weekly individual counseling sessions at Dolan Mental Health, weekly Courage to Change sessions, outpatient treatment services with Proyecto Primavera, weekly self-help group meetings, community service, and weekly drug testing. ¶ 8. His path was not without setbacks, notably two short-lived relapses, but he leaned on the services offered by the Court and achieved long term sobriety.

To maintain his progress after graduation, he still attends weekly one-on-one therapy, group therapy, and sponsor check-ins. ¶ 106. As of August 16, 2024, he works for Catholic Charities of Santa Clara County as a Case Manager I. He has started school at the Reentry Center at San Jose City College to obtain a peer mentor certificate, which is his first step toward becoming a certified drug and alcohol counselor. In his spare time, he volunteers at the Second Harvest Food Bank and is working with the V.A. to develop a beekeeping therapy program for veterans like himself. He has had custody of his son since August 2022.

# ARGUMENT

Criminal "punishment should fit the offender and not merely the crime." *Williams v. New York*, 337 U.S. 241, 247 (1949). That requires "the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States*, 552 U.S. 38, 52 (2007) (quotations omitted). The factors detailed in 18 U.S.C. § 3553(a) assist the Court in fulfilling this mandate to make "an individualized assessment of a particular defendant's culpability rather than a mechanistic application of a given sentence to a given category of crime." *United States v. Barker*, 771 F.2d 1362, 1365 (9th Cir. 1985). The sentence recommended in the U.S. Sentencing Guidelines ("U.S.S.G.") is only one factor for district courts to consider in making this judgment, and it may not be weighed more heavily than any other § 3553(a) factor. *Gall*, 552 U.S. at 50; *see also United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc).

Mr. Guardado asks this Court to sentence him to time served followed by three years of supervised release.

### 1. Post-Offense Rehabilitation

This Court can consider "post-crime maturation and self-rehabilitation" at sentencing. *See United States v. Ruff*, 535 F.3d 999, 1003 (9th Cir. 2008). The Supreme Court has "made clear that post-sentencing or post-offense rehabilitation—particularly in light of its tendency to reveal a defendant's likelihood of future criminal conduct—[is] a critical factor to consider in the imposition of a sentence." *United States v. Trujillo*, 713 F.3d 1003, 1010 (9th Cir. 2013) (citing *Pepper v. United States*, 562 U.S. 476, 491-93 (2011) and *Gall,* 552 U.S. at 59 (emphasis added)). Such rehabilitation is "the most up-to-date picture" of a defendant's history and characteristics, which in turn sheds light on whether a defendant will be deterred from committing another crime. *Pepper*, 562 U.S. at 492 (quoting 18 U.S.C. § 3553(a)(1)). Moreover, the underlying purposes of sentencing include not only punishment and deterrence, but also the provision of treatment to a defendant in need of it." *United States v. Bad Marriage*, 392 F.3d 1103, 1114 (9th Cir. 2004) (citing 18 U.S.C. § 3553(a)(2)(D)). Congress has cautioned courts to recognize that "imprisonment is not an appropriate means of promoting correction

and rehabilitation." 18 U.S.C. § 3582(a). Here, as detailed above, Mr. Guardado has made extraordinary efforts over a very long period of time to establish a law-abiding life and contribute to the community. A sentence of time served would allow him to continue that progress, and three years of supervised release will continue to provide him with the treatment necessary to promote correction and rehabilitation.

### 2. **Mr. Guardado's History and Characteristics Support the Requested Sentence**

Under 18 U.S.C. § 3553(a), Mr. Guardado's history and characteristics should be considered in determining the appropriate sentence. "Evidence about the defendant's background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse." *California v. Brown*, 479 U.S. 538, 545 (1987)(O'Connor, concurring). Here, the PSR describes Mr. Guardado's difficult background in detail. He has overcome a chaotic upbringing involving the absence of his father and abuse by his mother and her partners, as well as unexpected illness in young adulthood. Mr. Guardado's childhood and youth stands in stark contrast to the stability he now enjoys. The Court can and should take these circumstances into account when fashioning the appropriate sentence.

### 3. **The Need to Avoid Unwarranted Disparities**

In fashioning an appropriate sentence in this case, the Court must avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. 18 USC § 3553(a)(6). See also *United States v. Amezcua-Vasquez*, 567 F.3d 1050, 1055 (9th Cir. 2009). In this case, Mr. Guardado successfully completed CAP after guilty pleas to fraud and drug sales-related offenses. This Court is aware of the numerous individuals who have received "time served" sentences after completing CAP. In light of Mr. Guardado's rehabilitative efforts and in comparing his case to other defendants similarly situated, it is clear that a sentence of "time served" would avoid unwarranted disparities among similarly situated defendants.

# CONCLUSION

For all of the reasons set forth above, Mr. Guardado respectfully requests that the Court sentence him to three years of supervised release to be served concurrently, no fine, impose a $600 special assessment, and order restitution in the amount of $13,041.36.

Respectfully submitted,

September 4, 2024  /s/
DATED   JODI LINKER
Federal Public Defender
GABRIELA BISCHOF
Assistant Federal Public Defender
Northern District of California

*DEFENDANT'S SUPP. SENTENCING MEMORANDUM*
MARK GUARDADO   7